DANIEL F. FULTON, Appellant, *v.* NATIONAL ANILINE & CHEMICAL Co., INC., Respondent.

Fourth Department, January 29, 1930.

*John C. Wait*, for the appellant.

*Lyman M. Bass*, for the respondent.

SEARS, P. J. On the 10th day of April, 1923, the Industrial Separators Company, of whose rights the plaintiff is the assignee, entered into a contract, in writing, by the terms of which the Industrial Separators Company was to construct and sell to the defendant three certain filters of which the description, conditions of delivery and price were stated in the contract as follows:

" 1—4′ x 6′ Rotary Pressure Filter for operation
    on steam-air mixture at 180 lbs. pressure to be
    tested to 270 lbs. hydraulic. Equipped with
    monel metal filter cloth, screw conveyor dis-
    charge, high pressure lubricator and agitator.
    Delivery 8–9 weeks. Price F. O. B. Phila-
    delphia............................... $5,340 00

" Second 4′ x 6′ Rotary Pressure Filter (same as
    above)   *   *   *   Delivery 12 weeks. Price
    F. O. B. Philadelphia.................... 5,300 00

" One 2′ x 3′ Rotary Pressure Filter for operation
    on steam-air mixture at 150 lbs. pressure to be
    tested at 235 lbs. hydraulic. Equipped with
    monel metal filter cloth, screw conveyor dis-
    charge, high pressure and agitator. Delivery 4
    weeks. Price F. O. B. Philadelphia........ 1,850 00 "

These filters were intended for use by the defendant at its Buffalo plant in the manufacture of certain aniline dyes. No specifications or plans were attached to the contract or referred to in it. A filter such as those thus ordered is not an article having a standard form or construction. There is no dispute, however, that the filters were to be built so as to comply in design with instructions to be given by the engineering force of the defendant, and no question has arisen in this case at to the design which the filters took. Planning and decision in respect to design were intrusted by the defendant to a certain design engineer in its employ named Wait. The evidence in this case discloses no authority intrusted to Wait to make purchases on behalf of the defendant. His express authority from the defendant in dealing with those contracting for the delivery of machinery was confined to engineering features, including the specifications of design of apparatus.

On the 16th day of May, 1923, the defendant and the Industrial Separators Company entered into another contract, in writing, whereby the Industrial Separators Company was to construct and

sell to the defendant certain attachments for two of the filters mentioned in the earlier contract and for one other filter not included in the earlier contract above described. The description of these attachments with the provisions relating to delivery, price and payment are as follows:

> " Two Special paste type discharges, to be attached to the two 4′ x 6′ Rotary Pressure Filters, now on order.   Price attached to filters. . . . . . . . . . . $3,350 00
> " One Special paste type discharge for attachment to the 4′ x 6′ Rotary Pressure Filter, in delivery.   Price F. O. B. New York City. . . . . $1,660 00

> " Delivery item #1 with filters: Item #2 eight weeks.   Payment Thirty days."

It appears in a voluminous record that these special paste type discharges were ordered as substitutes for screw conveyor discharges previously specified as parts of filters.   It is alleged in the complaint and admitted in the answer that the " 2′ x 3′ Rotary Pressure Filter," being the third filter mentioned in the contract of April 10, 1923, and also one " 4′ x 6′ Rotary Pressure Filter," being the first mentioned in that contract, were constructed and delivered to the defendant and paid for by the defendant.   One of the two pressure type discharges mentioned in the first item of the contract of May 16, 1923, was attached to the four foot by six foot filter which was accepted and paid for as above stated, and was itself accepted and paid for.   The dispute in this case relates to the second " 4′ x 6′ Rotary Pressure Filter " mentioned in the contract of April 10, 1923, and to the remaining two of the three paste type discharges mentioned in the contract of May 16, 1923.

The complaint alleges that on or about the 19th day of May, 1923, and the 21st day of September, 1923, the parties to the original contract modified it by reducing the test pressure to 220 pounds; that the defendant waived the times of delivery as provided in the contracts, and that on the 15th day of February, 1924, the Industrial Separators Company delivered to the defendant the second " 4′ x 6′ Rotary Pressure " filter, and the two remaining paste type discharges, but that the defendant has failed to pay for the same.

The action was brought to recover the purchase price.   The defendant, in its answer, denied that the contract for the filters was amended as affecting the requisite pressure test, and denied that the time for delivery of the filters and discharges involved

had been waived, and contended that the seller had failed to comply with the terms of the contract, both as to time of delivery and because the filter would not stand the pressure test agreed to, but on the contrary developed various leaks and other defects when subjected to pressure considerably below that set forth in the contract, and was of defective material and workmanship. As to the pressure type discharges, it is claimed by the defendant that they were appurtenances of the filter with which they were delivered, and that the defendant was entitled to reject them by reason of the breach of the contract in relation to the filter.

The testimony in the record discloses the engineering organization and purchasing system of the defendant with great elaboration. It is apparent that the defendant and the Industrial Separators Company and the company which actually manufactured the filters were engaged in an experiment to devise apparatus suitable to defendant's needs. There passed to and fro between the defendant's design engineer on the one hand and the Industrial Separators Company and the company which actually manufactured the devices on the other hand much correspondence in relation to design. There is evidence to the effect that a filter operated with a paste type discharge does not need to be operated under as high pressure as one equipped with a screw conveyor discharge.

On May 19, 1923, three days after the paste discharges were ordered, defendant's design engineer wrote the Industrial Separators Company as follows:

" BUFFALO, N. Y. 5–19–23 "

" MR. E. S. BISHOP,
  " Industrial Separators,
   " 1907 Park Avenue, New York City.

" DEAR SIR: Confirming previous conversation, we will allow you a reduction in test pressure to 220# hydrostatic. This is done because of change in design from conveyor discharge to your special paste type discharge, which we understand cannot be operated at the higher pressure.

" In accordance with your recommendation, we will never operate the reconstructed 4' x 4' filter on steam pressures in excess of 45#.

     " J. F. WAIT,
      " Engineering Division."

No other express communication passed from the defendant to the seller modifying the requisite test pressure specified in the contract. When the first four foot by six foot filter was completed, it was tested only to a reduced pressure below that specified in the contract. It was accepted by the defendant and paid for. Instructions relating to design both of the filters and the dis-

charges were given some time after the specified dates for delivery had passed. There is proof that the filter was tested on February 14, 1924, before shipment, though not then formally assembled to a pressure of 240 pounds. It was shipped unassembled as defendant ordered. When the filter arrived in Buffalo it was assembled by the defendant, and on April 4, 1924, the test was made by the defendant. On the eleventh a letter was written by the defendant to the seller as follows:

" *April* 11, 1924.

" INDUSTRIAL SEPARATORS Co.,
" *North American Building,*
" *Philadelphia, Pa.*

" DEAR SIRS: With reference to your letter of February 25th, enclosing invoice in the sum of $8,635.00 covering one 4' x 6' rotary pressure filter with two special discharges for use in connection therewith (one attached and one extra), we would advise that the filter was tested by us upon its receipt, and that such test, which has just been completed, shows that it is defective and leaks badly under a pressure of 134 pounds. It consequently does not comply with the specifications contained in our contract with you and is not of use to us.

" We would also call your attention to the fact that your contract called for delivery during July, 1923, and that this was not made until February 29, 1924, an unexcused delay of nearly eight months.

" In view of the above, we hereby notify you that we reject the filter and the two special discharges, and rescind our contract for the same. The property will be returned to you as soon as we receive shipping instructions, which we would request be furnished immediately. Meantime the property is held for your account and at your risk. Yours very truly,

" NATIONAL ANILINE & CHEMICAL CO., INC.
" By H. F. ATHERTON."

It also appears that a further test was made later and that after some of the bolts had been tightened, a 230-pound pressure applied. At that pressure a number of minor leaks in the filter shell appeared along caulked seams or around rivet heads. A few small leaks occurred at what appeared to be welds, without any indication of porous metal. There were major leaks at the tail bearing and at the major discharge. The condition was no worse than occasionally obtained on shipments from other manufacturers. The device could be made tight by caulking the points where leaks occurred, or if this proved insufficient, a light layer of electric weld could be applied. The design engineer estimated that less than sixteen hours of work with a boilermaker and helper, and not

to exceed eight hours of the time of an electrical welder would make the job tight at a cost of less than sixty dollars. There is also evidence that test pressures up to 245 pounds were applied at this time. The defendant refused to allow the seller to work on the filter so as to do away with the defects.

At the close of the plaintiff's case a motion was made by the defendant for a nonsuit on the general ground that the plaintiff's assignor had not complied with its contracts. The motion was denied. The learned trial court seems at that time to have been of the opinion that a question of fact had been presented as to whether the contract for the filters had been modified in respect to the pressure test to be applied. During the introduction of the defendant's case, and with reference to another point, the plaintiff's counsel argued, as the trial court apparently understood him, that the design engineer had no authority whatever to modify an existing contract of the defendant. The motion for a nonsuit previously made was then reconsidered by the court, and the motion was granted on the ground that the filter contract was never modified as there was no evidence of modification except by act of the design engineer, and no evidence had been offered of any authority in him to agree to any modification. The pressure discharges were treated as incidental to the filter.

In this state of the pleadings and proof we have reached the conclusion that the plaintiff can only recover for the purchase price of the filters upon a modified contract and that the record presents a question of fact as to whether there was such a modification. We entertain no doubt that there was evidence of a waiver of the terms of the contracts as to dates of delivery both of the filter and of the discharge, and the defendant concedes this in its brief.

In reaching the conclusion that there was evidence of a modification of the filter contract, we have taken into consideration particularly the circumstances that the design of the filter was experimental and was left entirely in the hands of the defendant's engineering department; that a discharge was finally determined upon and contracted for which avoided the necessity for the high operative pressure required by a screw conveyor discharge; that the contract for the filter itself discloses that the suitable pressure test has some reference to the operating pressure to be used; that the design engineer recognized this by his letter of May 19, 1923, above quoted; that following the receipt of this letter a filter was manufactured and accepted although only tested at a reduced pressure and no suggestion appears on the record of any objection to the acceptance of that filter on that account. We do not feel

that the plaintiff should be precluded from the submission of the case to the jury because of the apparent change in position as to the authority of the design engineer. It is not upon the letter of the design engineer alone that the fact of modification is predicated, but upon all of the acts of the agents of the defendant above specified.

Aside from the question of the modification of the filter contract, a *prima facie* case was made out as to one of the pressure discharges. Of the two pressure discharges, one was an attachment to the filter with which it was delivered, and the defendant was entitled to reject it if it was entitled to reject the filter; but the second filter discharge was not intended for attachment to that particular filter but to a filter which already was " in delivery " at the time the contract for the discharges was made on May 16, 1923. The defect in the filter which was rejected, therefore, had no bearing upon one of the two discharges for the purchase price of which the plaintiff seeks to recover. The nonsuit was erroneous as to that particular appliance.

For these reasons, the judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event. The appeal from the order denying the motion to amend the judgment should be dismissed.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment and order denying motion for a new trial reversed on the law and a new trial granted, with costs to appellant to abide the event. Appeal from order denying motion to amend judgment dismissed.